# AFFIDAVIT

I, Christina Rosen, being duly sworn, hereby depose and state as follows:

## INTRODUCTION & AGENT BACKGROUND

1. I am employed as a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations ("DOL OIG") in Boston, Massachusetts. My responsibilities as a Special Agent with DOL OIG include investigating fraud, waste and abuse of Department of Labor programs, employees, and departments. I have been employed by the United States government as a Special Agent since October 2007. I am a graduate of the Criminal Investigator Training Program of the Federal Law Enforcement Training Center in Glynco, Georgia, and I have received extensive training in criminal investigation procedures and criminal law. In 2005, I graduated from Northeastern University with a Bachelor's degree in Criminal Justice. In 2006, I graduated from Boston University with a Master's degree in Criminal Justice.

2. As a federal agent, I am authorized to execute warrants issued under the authority of the United States.

3. I am currently investigating FERRIS BROOKS ("BROOKS") for his involvement in the theft of government property, in violation of 18 U.S.C. § 641 (the "Target Offense").

4. I make this affidavit in support of an application for a criminal complaint charging BROOKS with the Target Offense, and for a warrant for BROOKS' arrest.

5. Based on the facts set forth below, there is probable cause to believe that BROOKS committed the Target Offense.

6. The facts in this affidavit come from my personal observations and review of

records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND

*Economic Injury Disaster Loan*

7.  The U.S Small Business Administration administers the Economic Injury Disaster Loan ("EIDL") program. The EIDL program provides loans to small businesses that have suffered substantial economic injury due to a declared disaster. This program was expanded to provide relief to small businesses that experienced a loss in revenue during the COVID-19 pandemic.

8.  To obtain EIDL funds, a qualifying business had to submit an application directly to the U.S Small Business Administration. If approved, the U.S. Treasury distributed funds to the applicant. EIDL applications had to be submitted by an authorized representative of the business and provide details about the applicant's business. The application also required the authorized representative to acknowledge the program rules and make affirmative certifications. EIDL proceeds were supposed to be used for working capital, including payroll costs, salaries and sick leave, rent or mortgage payments, material costs, and preexisting business debt.

*Unemployment Insurance*

9.  During 2020 and 2021, in the Commonwealth of Massachusetts, Unemployment Insurance ("UI") benefits were funded by the UI Trust Fund, which was comprised of federal funds as well as monies obtained by state-imposed taxes on employers. The Department of Unemployment Assistance ("DUA") was responsible for administering the UI program in

Massachusetts.

10. To apply for UI, a claimant had to first create an online account and provide their Social Security number, date of birth, mailing address, phone number, and email address, as well as their former employer's name and address, the reason for unemployed status, and the start and end dates of employment. At the "Identity Verification" section, the claimant had to certify "under penalty of perjury, all information provided is as complete and accurate to the best of my ability."

11. UI claims submitted online to DUA were processed via Amazon Web Services ("AWS"). UI claims were frequently submitted via the internet, and I understand that individuals who submit unemployment information to DUA via the internet caused wire communications to be transmitted to and/or from these servers. DUA's UI system tracked activity associated with each registered account, including the Internet Protocol ("IP") addresses assigned to electronic devices used to initiate activity on accounts.

*Pandemic Unemployment Assistance*

12. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created a temporary federal unemployment insurance program called Pandemic Unemployment Assistance ("PUA"). PUA provided unemployment insurance benefits for individuals who were not eligible for UI (*e.g.*, the self-employed, independent contractors, or gig economy workers). PUA provided payments for these benefits beginning on or after January 27, 2020 and ending on or before September 4, 2021. As with the UI program, DUA administered and managed the PUA program.

13. Massachusetts residents applied to DUA for PUA benefits through an online

portal over which they submitted personally identifiable information ("PII"). As part of the PUA application process, claimants provided their first and last name, Social Security number, date of birth, and a residential and mailing address. In addition, claimants selected a preferred payment method: direct deposit or payment of their benefit on to a debit card. Claimants also provided a phone number and an email address to be used by DUA to provide updates, contact the claimant, and for authentication purposes.

14. Claimants had to certify that they were working in Massachusetts, and not working in another state besides Massachusetts, when they were impacted by COVID-19. Claimants also had to certify that the information in the Massachusetts PUA application was accurate and that the claimants were submitting claims on behalf of himself or herself and not on behalf of another person.

15. The PUA claims submitted to DUA were processed on a server in Colorado. The PUA claims information was also transmitted to DUA headquarters, located in Boston, Massachusetts, for purposes of review by DUA employees, maintenance, and to facilitate correspondence with claimants.

*Economic Impact Payments*

16. In addition to PUA, the CARES Act provided Economic Impact Payments ("EIP") of up to $1,200 per eligible adult. Additional EIP funding was subsequently made available on or about December 27, 2020, under the COVID-related Tax Relief Act of 2020, and on or about March 11, 2021.

17. Taxpayers with direct deposit information on file with the Internal Revenue Service ("IRS") could receive EIP by direct deposit. Otherwise, taxpayers received their EIP as a check or on a debit card that was sent in the mail. The EIP check or debit card was sent to the

mailing address from the latest processed tax return from 2019 or 2020.

## PROBABLE CAUSE

*BROOKS' Background*

18.     BROOKS is a 40-year-old resident of Plymouth, Massachusetts.

19.     The investigation identified BROOKS' cellular phone number (last four 0106, "BROOKS' phone number") through, among other methods, a review of T-Mobile records that list BROOKS' wife as T-Mobile's subscriber and BROOKS as the associated device's Mobile Station International Subscriber Directory Number.

20.     The investigation identified BROOKS' address in Plymouth, Massachusetts ("BROOKS' address") through, among other methods, U.S. Postal Service records and information obtained from the Massachusetts Registry of Motor Vehicles.

21.     The investigation identified BROOKS' IP address (last five 109.57, "BROOKS' IP address") through, among other methods, Comcast Cable Communications, LLC ("Comcast") subscriber records listing BROOKS' name, address, and phone number.

22.     The investigation identified BROOKS' Google email address ("BROOKS' email") through, among other methods, Google subscriber records listing BROOKS' name and BROOKS' phone number. The investigation also identified multiple instances where BROOKS used BROOKS' email, including to apply for government benefits in his own name, open a bank account, and send a package via FedEx.

23.     The investigation identified BROOKS' bank accounts, including, for example, a Bank of America account (last four 9250, "BROOKS' BoA account"), a TD Bank account (last four 5350, "BROOKS' TD Bank account"), and a Sutton Bank account (last four 4426, "BROOKS' Sutton Bank account") through, among other methods, bank records listing

BROOKS' name and address.

*Overview of the BROOKS' Theft and Attempted Theft of Government Property*

24. BROOKS submitted an EIDL application in the name of a fake business, which was denied by the U.S. Small Business Administration. BROOKS also submitted applications for unemployment benefits in his own name that contained false statements for which BROOKS received approximately $15,000 in unemployment benefits.

25. Additionally, BROOKS submitted applications for unemployment benefits in the names of others that contained false information. DUA records reflect that more than fifteen PUA claims in the names of others were submitted and/or accessed from BROOKS' IP address. In total, those claims paid out more than $400,000. Some of those claims were submitted using dummy email accounts created by BROOKS and directed payments to BROOKS' bank accounts.

26. Lastly, BROOKS filed multiple tax returns in the names of others. IRS records reflect that tax documents for approximately ten people were submitted from BROOKS' IP address. In total, those tax submissions resulted in the distribution of more than $15,000 in EIP. Some of the tax submissions in the names of others listed BROOKS' phone number, BROOKS' address, and/or BROOKS' email, and resulted in checks being mailed to BROOKS' address that were later cashed by BROOKS.

27. Additional details of some of the fraudulent claims for benefits summarized above are provided in the following paragraphs.

*BROOKS' Fraudulent EIDL Application*

28. On or about December 1, 2020, BROOKS submitted an EIDL application to the U.S. Small Business Administration. The application claimed that BROOKS was the owner of

"Ferris Brooks Consulting" that began operating on August 15, 2016. The application listed BROOKS' email and provided BROOKS' address as the business address. The application also requested that EIDL funds be deposited into a Bank of America checking account (last four 9315), which Bank of America records reflect was opened in BROOKS' name on March 30, 2019.

29. The application stated that Ferris Brooks Consulting had a gross revenue of $90,000 in 2019 with a monthly revenue and sales of $7,500. However, according to IRS records, there have been no tax returns filed for Ferris Brooks Consulting, and BROOKS' own 2019 Form 1040 does not reflect the $90,000 of gross revenue purportedly generated by Ferris Brooks Consulting in 2019. Further, according to Massachusetts Secretary of State records, Ferris Brooks Consulting is not a registered business, and further, there is no business registered in the name of BROOKS. Ferris Brooks Consulting also has no internet presence.

30. SBA declined BROOKS' EIDL application for failing to substantiate an economic injury to a business.

*BROOKS' Fraudulent Claims to DUA*

31. On or about April 23, 2020, a Massachusetts PUA claim was submitted in BROOKS' name using his Social Security number, date of birth, BROOKS' address, BROOKS' phone number, and BROOKS' email address. The claim requested PUA payments into BROOKS' BoA account. From on or about April 23, 2020 to on or about May 18, 2020, BROOKS' BoA account received payments from DUA.

32. In addition to the PUA claim, on or about May 23, 2020, a Massachusetts COVID-19 UI claim was submitted in BROOKS' name using his Social Security number, date of birth, BROOKS' address, BROOKS' phone number, and BROOKS' email. BROOKS

7

requested UI payments be directly deposited into BROOKS' BoA account. BROOKS filed at least 17 weekly certifications between on or about September 6, 2020 and on or about December 27, 2020 in which BROOKS certified that he did not work and did not apply for or receive income from other sources during the reporting period. Contrary to those certifications, during the applicable reporting period, BROOKS applied for PUA benefits, as described above, and BROOKS also received salary payments from a Massachusetts employer into BROOKS' BoA account.

*Fraudulent PUA Claim Submitted in the Name of Individual 1*

33. On or about April 29, 2020, a PUA claim was filed with DUA in the name and Social Security number of Individual 1. The claim was submitted from BROOKS' IP address, provided BROOKS' phone number for authentication purposes, and directed payments to BROOKS' TD Bank account. The claim also provided a Gmail.com email address in the name of Individual 1, which Gmail records reflect was created using BROOKS' email and BROOKS' phone number on the same day that the PUA claim was submitted to DUA (April 29, 2020).

34. Individual 1's claim contained multiple false certifications. For example, the claim certified that Individual 1 was living in Massachusetts and working for BROOKS as a "full time Housekeeper" and "child care" provider. However, based on Individual 1's travel records and bank records, Individual 1 lived and worked outside of the United States at the time the PUA claim was filed, had been living outside of the United States for several years, and was not working for BROOKS. Additionally, the claim certified that Individual 1 was submitting the claim and verifying its accuracy. However, based on the information provided above, BROOKS, and not Individual 1, submitted the claim and its contents were inaccurate.

35. On or about October 13, 2022, law enforcement agents interviewed Individual 1

in New York. Individual 1 stated that they had been living in Dubai since 2011 and did not apply for PUA benefits in Massachusetts.

36. According to DUA records, BROOKS' IP address was used more than 50 times to access the PUA claim in the name of Individual 1. In total, that PUA claim paid out more than $45,000 in PUA benefits, which included payments into bank accounts in BROOKS' name and/or controlled by BROOKS.

*Fraudulent PUA Claim Submitted in the Name of Individual 2*

37. On or about May 8, 2020, a PUA claim was filed with DUA in the name and Social Security number of Individual 2. The claim provided BROOKS' phone number for authentication purposes and directed payments to BROOKS' TD Bank account. The claim also provided a Gmail.com email address in the name of Individual 2, which Gmail records reflect does not actually exist.

38. Individual 2's claim contained multiple false certifications. For example, the claim certified that Individual 2 was living at an address in Boston, Massachusetts, while working for BROOKS in Plymouth, Massachusetts as a "full time Housekeeper" and "child care" provider. Not only was this the same occupation listed on Individual 1's PUA claim, but based on records available to law enforcement, Individual 2 was homeless and not working at or around the time the PUA claim was submitted in Individual 2's name. Additionally, the claim certified that Individual 2 was submitting the claim and verifying its accuracy. However, based on the information provided above, BROOKS, and not Individual 2, submitted the claim and its contents were inaccurate.

39. According to DUA records, BROOKS' IP address was used more than 60 times to access the fraudulent PUA claim in the name of Individual 2. In total, that fraudulent PUA

claim paid out more than $45,000 in PUA benefits, which included payments into bank accounts in BROOKS' name and/or controlled by BROOKS.

*Fraudulent PUA Claim Submitted in the Name of Individual 3*

40. On or about May 8, 2020, a PUA claim was filed with DUA in the name and Social Security number of Individual 3. The claim provided BROOKS' phone number for authentication purposes and directed payments to BROOKS' Sutton Bank account. The claim also provided a Yahoo email address in the name of Individual 3, which Yahoo records reflect was created using BROOKS' phone number on the same day that the PUA claim was submitted to DUA (May 8, 2020).

41. Individual 3's claim contained multiple false certifications. For example, the claim certified that Individual 3 was living at an address in Dorchester, Massachusetts, while working for BROOKS in Plymouth, Massachusetts as a "full time groundskeeper" and "auto detail" provider. However, based on records available to law enforcement, Individual 3 was homeless and not working at or around the time the PUA claim was submitted in Individual 3's name. Additionally, the claim certified that Individual 3 was submitting the claim and verifying its accuracy. However, based on the information provided above, BROOKS, and not Individual 3, submitted the claim and its contents were inaccurate.

42. According to DUA records, BROOKS' IP address was used more than 80 times to access the fraudulent PUA claim in the name of Individual 3. In total, that fraudulent PUA claim paid out more than $44,000 in PUA benefits, which included payments into bank accounts in BROOKS' name and/or controlled by BROOKS.

*Fraudulent EIP for Individual 2 and Individual 3*

43. IRS records reflect that IRS Forms 1040, U.S. Individual Income Tax Return, were filed in the names of Individual 2 and Individual 3 with the IRS Service Center in Andover, Massachusetts from BROOKS' IP address. BROOKS is not listed as the tax return preparer on those documents and BROOKS is not a registered tax return preparer with the IRS.

44. IRS records also reflect that, as a result of the tax filings in the names of Individual 2 and Individual 3, separate EIP checks made payable to Individual 2 and Individual 3 were sent to BROOKS' address.

45. Bank records reflect that the IRS checks were deposited. The written note underneath the signature on both checks stated, "Pay to the Order of Ferris Brooks" followed by a signature in BROOKS' name.

## CONCLUSION

46. Based on the information described above, there is probable cause to believe that that BROOKS has violated the Target Offense.

Sworn to under the pains and penalties of perjury,

*Christina Rosen*
Special Agent Christina Rosen
U.S. Department of Labor
Office of Inspector General

Subscribed and sworn to by telephone in accordance with Fed. R. Crim. P. 4.1 on October _____, 2023  Oct 2, 2023

*Judith Gail Dein*
Hon. Judith G. Dein
United States Magistrate Judge

11